IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IRA FINGLES                              :          CIVIL ACTION
                                         :          NO. 08-05943
            v.                           :
                                         :
CONTINENTAL CASUALTY COMPANY             :

O'NEILL, J.                                                    APRIL 28, 2010

MEMORANDUM

On July 31, 2008, plaintiff Ira Fingles, the executor of the estate of Herbert Fingles,

initiated this lawsuit in the Philadelphia County Court of Common Pleas.  His five-count

complaint alleged misconduct by defendant, Continental Casualty Company, with respect to its

handling of an insurance agreement between Herbert Fingles and Continental.[1]  On December 23,

2008, the case was removed to this Court.[2]  On December 29, 2008, Continental moved to

dismiss counts III and V of the complaint.  Presently before me are Continental's motion to

dismiss counts III and V of plaintiff's complaint, plaintiff's response and Continental's reply.

For the following reasons, I will grant in part and deny in part the motion.

BACKGROUND

Herbert Fingles entered into a long-term care insurance policy with Continental Casualty

Company on October 30, 1996.  On September 10, 2003, Fingles underwent triple bypass

surgery.  During the surgery, he suffered anoxic encephalopathy–brain damage resulting from

oxygen deprivation.  Following the surgery, he received several weeks of treatment at Magee

_____

    [1]      Plaintiff's complaint contains the following claims: (I) declaratory judgment; (II)
breach of contract; (III) common law insurance bad faith; (IV) bad faith conduct of an insurer in
violation of 42 Pa. Cons. Stat. Ann. § 8371; and (V) violation of the Unfair Trade Practices and
Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-1 et seq.

    [2]      This case was reassigned to me from a colleague's docket on April 12, 2010.

Rehabilitation Hospital. Upon discharge from Magee, Fingles was unable to care for himself so he hired Mabel Barclay, a certified nursing assistant, to provide in-home care. On May 22, 2004, he submitted claims to Continental requesting payment for Barclay's services. Continental denied the request because Barclay was not affiliated with a licensed home health care agency as defined in Fingles's policy.

Because his claim was denied, Fingles moved into an assisted living facility on July 15, 2004. On September 22, 2004, he submitted a claim to Continental requesting payment for the assisted living facility. Continental informed Fingles that his claim could not be processed because several of the necessary forms were missing. Fingles repeatedly requested that Continental specify which forms were missing and send such forms to him, but never received the requested clarification or the forms themselves. Fingles ultimately withdrew the September 22, 2004 claim.

In May 2005, Fingles submitted a third claim to Continental. Because of his prior frustration with the claims process, he requested that any missing forms be forwarded to him within one week. Continental again refused to pay the claim, questioning for the first time whether Fingles actually needed the care he received.

In September 2005, Continental sent a nurse to perform an in-home assessment of Fingles's need for the care that he had been receiving. After reviewing the nurse's report, Continental determined that Fingles was eligible for the care he had been receiving. In December 2005, however, Continental informed Fingles that his coverage had been terminated in February 2004 because he had missed a premium payment. Continental sent no notice of the missed premium payment to Fingles prior to terminating his coverage and, indeed, until

2

December 2005, Fingles had received no notice of the termination of coverage.

Despite the missed premium payment, Continental twice informed Fingles that his coverage would be reinstated if he paid the past-due amount. Fingles died on January 7, 2006. Ten days later, plaintiff remitted $10,603.44 to Continental to reinstate the coverage. Continental then requested supplemental information, which plaintiff provided. On June 5, 2006, Continental issued a partial payment of $11,090.00 on the claim. It denied the remainder of Fingles's claim.

The documents plaintiff has attached to his complaint reveal a plethora of correspondence between Continental and Fingles or plaintiff. At least five times during this process, Fingles requested copies of all documents in Continental's possession that related to Fingles. He never received the requested documents. Additionally, on December 5, 2005, Fingles requested that Continental cease sending correspondence directly to him and instead forward all correspondence to his attorney. Continental never honored that request.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations

omitted).  The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Wilkerson v. New Media Tech. Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  The Court of Appeals has recently made clear that after Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 210-11 (quoting Iqbal, 129 S. Ct. at 1950).  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 129 S. Ct. at 1949.

DISCUSSION

Continental moves to dismiss count III (common law insurance bad faith) and count V

4

(UTPCPL violation) of the complaint.  It argues that count III should be dismissed because

Pennsylvania law does not recognize a common law remedy for bad faith conduct by an insurer

independent of a breach of contract claim.  It argues that count V should be dismissed because

Continental's alleged failure to pay benefits constitutes nonfeasance, which is not actionable

under the UTPCPL, and because plaintiff has not adequately alleged the elements of fraud.  Each

argument will be discussed in turn.

I.      Count III Will Be Dismissed Because the Common Law Bad Faith Claim is Subsumed by
        the Breach of Contract Claim

Continental argues that count III of the complaint, which alleges a common law bad faith

claim, must be dismissed because it is subsumed by the breach of contract claim set forth in

count II.  Plaintiff argues that I should deny the motion to dismiss because Pennsylvania law

recognizes two species of bad faith claims–one sounding in contract and the other sounding in

tort under 42 Pa. Cons. Stat. Ann. § 8371.  I agree with Continental.

As correctly noted by plaintiff, bad faith claims can arise under tort law as well as under

contract law.  Continental does not dispute this conclusion.  See Def.'s Reply at 2-3.

Pennsylvania Courts have consistently held, however, that a bad faith claim sounding in contract

is subsumed within a breach of contract claim.[3]  See, e.g., LSI Title Agency, Inc. v. Evaluation

Servs., Inc., 951 A.2d 384, 392 (Pa. Super. Ct. 2008) ("Having determined that . . . the claim for

breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract

claim, we conclude that the trial court correctly granted LSI's motion for judgment on the

pleadings . . . ."); JHE, Inc. v. Southeastern Pennsylvania Transp. Auth., No. 1790, 2002 WL

_____

[3]      A "bad faith" claim is synonymous with a "breach of duty of good faith" claim.
See Nordi v. Keystone Health Plan West, Inc., 989 A.2d 376, 384 (Pa. Super. Ct. 2010).

1018941, at *5 (Pa. Com. Pl. May 17, 2002) ("After reviewing the relevant decisions, this Court concludes that the implied covenant of good faith does not allow for a claim separate and distinct from a breach of contract claim.") (emphasis in original); see also Meyer v. CUNA Mut. Group, No. 03-602, 2007 WL 2907276, at *14 (W.D. Pa. Sept. 28, 2007) ("A party is generally precluded from maintaining a claim for the breach of the implied duty of good faith and fair dealing separate and distinct from the underlying breach of contract claim."); In re K-Dur Antitrust Litigation, 338 F. Supp. 2d 517, 549 (D.N.J. 2004) ("Although Pennsylvania imposes a duty of good faith and fair dealing on each party in the performance of contracts, there is no separate cause of action for breach of these duties under Pennsylvania law.") (internal citations omitted). In other words, "a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself." Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000). Counts II and III of the complaint are therefore duplicative and count III will be dismissed.

The cases cited by plaintiff do not alter this conclusion. Most of those cases stand for the herein-undisputed proposition that a bad faith claim may, in certain cases, be pursued under both tort and contract law. See, e.g., Birth Ctr. v. St. Paul Cos., Inc., 787 A.2d 376, 409 (Pa. 2001) (Nigro, J., concurring) ("I believe that the law in this Commonwealth establishes that there are two separate "bad faith" claims that an insured can bring against an insurer-a contract claim for breach of the implied contractual duty to act in good faith, and a statutory bad faith tort claim sounding in tort under 42 Pa.C.S. § 8371."). None of the cases cited by plaintiff, however, establish a right to bring a free-standing bad faith claim based on a contract in addition to a

breach of contract claim, as plaintiff attempts to do here.[4]  As discussed <u>supra</u>, no such right

exists in Pennsylvania.[5]

II.     Count V Will Be Partially Dismissed Because Plaintiff Has Not Met the Heightened
        Requirement for Pleading Fraud

Continental argues that count V of the complaint, which alleges violations of the

UTPCPL, should be dismissed for two reasons: first, because Continental's alleged wrongdoing

in this case constituted mere nonfeasance which is not actionable under the statute; and second,

because plaintiff has not met his burden of pleading common law fraud as required under

UTPCPL.  Plaintiff argues that Continental's actions rose to the level of malfeasance, which is

actionable under the statute, and that he has met the pleading requirements.  With respect to

Continental's first argument, I find that plaintiff has alleged malfeasance.  With respect to

Continental's second argument, I find that plaintiff has not sufficiently alleged fraudulent

conduct on the part of Continental, but has alleged deceptive conduct.  Each conclusion is

discussed more fully <u>infra</u>.

A.      The Allegations in the Complaint Constitute Actionable Malfeasance

The UTPCPL is "designed to protect the public from fraud and deceptive business

---

[4]      I note that 42 Pa. Cons. Stat. Ann. § 8371 provides plaintiff's exclusive remedy in tort.  In <u>D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co.</u>, 431 A.2d 966 (Pa. 1981), the Court held that Pennsylvania does not recognize a common law tort action for bad faith.  <u>See</u> <u>Employers Mut. Cas. Co. v. Loos</u>, 476 F. Supp. 2d 478, 489 n.8 (W.D. Pa. 2007).

[5]      Pennsylvania case law permits a plaintiff to bring simultaneous claims for bad faith sounding in contract and bad faith sounding in tort.  In the present case, however, plaintiff essentially attempts to bring three simultaneous bad faith claims–one sounding in tort under 42 Pa. Cons. Stat. Ann. § 8371, one breach of contract claim and one free standing bad faith claim sounding in contract.  As discussed <u>supra</u>, Pennsylvania law dictates that the breach of contract claim and the free standing contractual bad faith claim merge.

practices." See Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008). It prohibits marketplace participants from engaging in "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." See 73 Pa. Stat. Ann. § 201-3. In order to implicate the statute, a defendant's actions must rise to the level of malfeasance–the improper performance of a contractual obligation. See Gordon v. Pennsylvania Blue Shield, 548 A.2d 600, 604 (Pa. Super. Ct. 1988). Mere nonfeasance–the failure to perform a duty prescribed by a contract–is not actionable under the UTPCPL. See id. The dispositive question, then, is whether the actions alleged in the complaint constitute malfeasance or nonfeasance.

Continental relies on Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995), in support of its assertion that its actions constituted nonfeasance. There, the defendant insurance company sent the plaintiff a letter explaining its decision to deny her claim. See Horowitz, 57 F.3d at 307. The Court of Appeals held that such an action does not constitute malfeasance.

I find that this case is distinguishable from Horowitz. First, the District Court in Horowitz decided the matter at summary judgment stage. See Horowitz v. Fed. Kemper Life Assur. Co., 861 F. Supp. 1252, 1261-62 (E.D. Pa. 1994) (reversed in part on other grounds Horowitz, 57 F.3d at 307). It therefore had the benefit of a well developed record from which to draw the fact-driven conclusion that the defendant's actions were nonfeasant as opposed to malfeasant. See id. Second, the allegations in the present case are different than those in Horowitz. In Horowitz, the defendant wrote a letter to the plaintiff denying her claim. See id. at 1262. In that letter, however, the defendant did not notify the plaintiff of certain caselaw that, in

the plaintiff's opinion, established her right to collect under the policy. See id. The plaintiff argued that the defendant's actions were unfair and deceptive and therefore in violation of the UTPCPL. See id. Both the District Court and the Court of Appeals disagreed, finding that the defendant's actions amounted, at most, to nonfeasance. See Horowitz, 861 F. Supp. at 1262, aff'd, 57 F.3d at 307.

In this case, plaintiff alleges more than mere denial of the claim. Indeed, the complaint details at least three instances of malfeasance by Continental. First, despite the fact that Fingles's policy was allegedly terminated in February 2004, Fingles was not informed of the termination until December 2005–almost two years later. In the meantime, Continental regularly communicated with Fingles and repeatedly denied his claims for reasons unrelated to the termination of his coverage. In other words, Continental acted as his insurer despite the fact that his coverage had terminated.

The second example of Continental's malfeasance involves its allegedly dilatory requests for documents. After Fingles was informed that his policy had terminated, Continental allowed him to reinstate his policy by paying the past-due amount. Following the January 17, 2006, reinstatement of the policy, plaintiff filed another claim for benefits. Continental again informed plaintiff that information was missing. It requested copies of the bills for which plaintiff was seeking reimbursement. Plaintiff alleges that such bills had been submitted "on multiple occasions[,]" see Compl. Exh. 12, and that the request was merely a dilatory tactic by Continental.

Finally, the anoxic encephalopathy Fingles suffered during his September 10, 2003 surgery left him mentally incapacitated. Therefore, on December 5, 2005, Fingles, through his

attorney, requested that all correspondence from Continental be directed to his attorney. Continental nevertheless continued to correspond directly with Fingles, which forced Fingles's attorney to renew his request on December 29, 2005 and again on January 17, 2006. Plaintiff alleges in the complaint that Continental's refusal to honor the request was an attempt to take advantage of Fingles's "confused mental state." See Compl. ¶ 41. As support for this assertion, plaintiff points to the fact that Continental was repeatedly asked to provide Fingles's attorney with a copy of its file on Fingles, but it never responded to such requests.

When plaintiff's allegations are viewed in totality, it is clear that the allegations amount to more than simple failure to perform the contract and instead "inject the question of the propriety of [Contintental's] behavior in performing [its] duty." See Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009). Accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of plaintiff, as I must at this stage, see Twombley, 550 U.S. at 555, I find that a reasonable jury could conclude that Continental "misperformed its obligation to [Fingles and plaintiff] rather than failed to perform it." See Zaloga, 671 F. Supp. 2d at 633.

B.      Pleading Requirements

Continental also argues that plaintiff has failed to state a claim under the UTPCPL because the complaint contains no allegations of common law fraud. As noted supra, the UTPCPL is designed to protect individuals from "unfair methods of competition and unfair or deceptive acts or practices." 73 Pa. Stat. Ann. § 201-3. The statute defines unfair methods of competition and unfair or deceptive acts or practices in a variety of case-specific manners, none

of which are relevant here.[6]  However, it also includes a general "catch-all" provision which

prohibits "engaging in any other fraudulent or deceptive conduct which creates a likelihood of

confusion or of misunderstanding."  Id. at § 201-2(4)(xxi).

Here, plaintiff has alleged violations of the catch-all provision.  He has not, however,

specified whether Continental's conduct was fraudulent or merely deceptive.  See Tran v. Metro.

Life Ins. Co., 408 F.3d 130, 140 (3d Cir. 2005) (acknowledging that a plaintiff can bring a

UTPCPL claim by alleging either fraudulent conduct or deceptive conduct).  I will thus consider

whether the allegations contained in the complaint are sufficient to state a claim under either

prong.

      1.      The Allegations in the Complaint Are Insufficient To State a Claim Under
                the Fraudulent Prong of the Catch-All Provision

Pennsylvania courts have required all private plaintiffs alleging violations of the catch-all

provision's fraudulent conduct prong to plead the elements of common law fraud.  See Tran, 408

F.3d at 140 (citing Toy v. Metro. Life Ins. Co., 863 A.2d 1, 13 (Pa. Super. Ct. 2004)).  A fraud

claim consists of six elements: (1) a misrepresentation; (2) material to the transaction; (3) made

falsely; (4) with the intent of misleading another to rely on it; (5) justifiable reliance resulted; and

(6) injury was proximately caused by reliance.  See Santana Prods. Inc. v. Bobrick Washroom

Equip., Inc., 401 F.3d 123, 136 (3d Cir. 2005) (citing Viquers v. Phillip Morris USA, Inc., 836

A.2d 534 (Pa. Super. Ct. 2003)).  Under the Federal Rules of Civil Procedure, "a party [alleging

fraud or mistake] must state with particularity the circumstances constituting fraud or mistake."

---

[6]      For example, 73 Pa. Stat. Ann. § 201-2(4)(x) prohibits "[a]dvertising goods or
services with intent not to supply reasonably expectable public demand, unless the advertisement
discloses a limitation of quantity."

Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007).

Plaintiff has failed to meet Rule 9(b)'s heightened pleading requirement. He does not identify a specific misrepresentation by Continental upon which Fingles (or plaintiff) relied. There are, to be sure, a variety of general allegations in the complaint that could be construed as misrepresentations by Continental. For example, paragraph 62 alleges, in relevant part, that "[Continental] [m]isrepresented the benefits, advantages, conditions or terms of the policy [as well as] pertinent facts related to the Policy provisions relating to coverage[.]" Such general allegations, however, do not satisfy the requirements of Rule 9(b) because they do not include the date, the time or the place of the alleged misrepresentation. <u>See id.</u> Nor do they provide sufficient notice of the content of the alleged misrepresentations–for instance, what "benefits, advantages, conditions[,] terms of the policy [or] pertinent facts . . ." were misrepresented. <u>See Lum v. Bank of America</u>, 361 F.3d 217, 224-25 (3d Cir. 2004) (ruling insufficient allegations that do not identify particular fraudulent transactions). Because the complaint does not adequately plead the elements of fraud I will dismiss count V to the extent plaintiff relies upon the fraudulent conduct prong of the catch-all provision.[7] I will grant plaintiff leave to amend his complaint with respect to the fraudulent conduct prong.

        2.        The Allegations in the Complaint Are Sufficient To State a Claim Under

---

[7] Because I have found that plaintiff has not adequately alleged a specific misrepresentation, I need not address whether he has sufficiently alleged the remaining elements of fraud. Plaintiff should be aware, however, the Rule 9(b)'s heightened pleading requirement applies with equal force to all six elements of fraud. In the event that he decides to file an amended complaint, each element of common law fraud should be alleged with particularity.

the Deceptive Conduct Prong of the Catch-All Provision

The standard for pleading a violation of the catch-all provision's deceptive conduct prong is substantively different and procedurally less demanding than the standard for pleading fraudulent conduct. From a procedural standpoint, Rule 9(b) is not implicated by allegations of deceptive conduct. See Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009) (noting that Rule 9(b)'s particularity requirement applies only to claims of fraud). Instead, the normal Twombly standard applies. See id. Substantively, the plaintiff must allege "facts showing a deceptive act." See id. at 470. A deceptive act is "conduct that is likely to deceive a consumer acting reasonably under similar circumstances." See id. (citing Black's Law Dictionary 455 (8th ed. 2004)). The plaintiff must also allege that he justifiably relied on the deceptive act, and that such justifiable reliance caused ascertainable loss. See id.

After reviewing the allegations contained in the complaint, as well as all inferences that can be reasonably drawn therefrom, I find that plaintiff has adequately alleged a claim under the deceptive conduct prong. The complaint alleges that Continental had an obligation to pay for some or all of Fingles's medical expenses for as long as he remained eligible under his policy. See Compl. ¶¶ 47-49. It further alleges that, despite the fact that Fingles was eligible for care, Continental engaged in a "continuing course of conduct designed to discourage, [to] interfere with and to avoid its obligations arising under the Policy." Compl. ¶ 39. More specifically, Continental did not process Fingles's September 22, 2004 claim for benefits because it claimed that necessary forms were missing. Fingles allegedly attempted to rectify the situation by "repeatedly request[ing] details and the missing forms" but he never received either. Compl. ¶ 20. Despite the fact that Continental had assured Fingles that his need for clinical services was

clear, Fingles's next claim, submitted in May 2005, was denied by Continental on the ground that his need for the requested care was unclear. Compl. ¶ 24. After Continental's own nurse concluded that Fingles had a clinical need for the care he requested, Continental informed him that his claim was denied because his coverage had terminated almost two years prior because of a missed premium payment. Compl. ¶ 27. Finally, after allowing plaintiff to reinstate the coverage by paying the past-due premiums, Continental sought for the first time additional information including copies of Fingles's bills, which had already been submitted "multiple times." See Compl. ¶ 35, Exh. 13. Throughout the entire claims process, plaintiff alleges that despite Fingles's repeated requests that Continental communicate with his attorney, Continental continued to correspond directly with Fingles in an effort to take advantage of his "confused mental state." Compl. ¶¶ 40-41.

Assuming that these allegations are true, a reasonable jury could conclude that Fingles and plaintiff justifiably relied on Continental's promise to provide certain coverage. That promise was rendered deceptive when Continental erected a series of procedural hurdles solely designed to prevent Fingles from obtaining the care he was owed. Fingles suffered ascertainable harm in that he was forced to pay his medical expenses out of his own pocket and was either never reimbursed for such expenses or not reimbursed in a timely fashion. Under this theory of deceptive conduct, then, I find that plaintiff has stated a valid UTPCPL claim.

## CONCLUSION

For the reasons discussed supra, I will dismiss count III because the bad faith claim stated therein is subsumed by the breach of contract claim stated in count II. I will also dismiss the UTPCPL claim stated in count V to the extent that it relies on alleged fraudulent conduct by

Continental. The UTPCPL claim will survive, however, to the extent that it alleges mere deceptive conduct on the part of Continental.

An appropriate Order follows.